IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff,** vs. ALLAN ROY GOODMAN, **Defendant.** | CR 19–43–M–DWM ORDER |

FILED
DEC 12 2019
Clerk, U.S District Court
District Of Montana
Missoula

Defendant Allan Roy Goodman is charged with five drug offenses, two firearm offenses, and one count of obstructing justice by retaliating against an informant. (Doc. 52.) He seeks to suppress the evidence gathered as a result of five search warrants on the ground that the warrant affidavits failed to establish the requisite reliability of the confidential informants used. (Doc. 66.) The government opposes the motion. (Doc. 73.) A hearing was held on December 12, 2019, and the government called FBI Special Agent Levi Kroschel. For the reasons stated below, Goodman's motion is denied.

## ANALYSIS

Goodman seeks to suppress the evidence gathered as a result of five separate warrants, three issued by a state district judge and two issued by a United States magistrate judge. "The burden is on the defendant who seeks to suppress evidence obtained under a regularly issued search warrant to show the want of probable

1

cause." *Chin Kay v. United States*, 311 F.2d 317, 321 (9th Cir. 1962). The warrants are addressed in turn.

## I. Controlled Buys

The first three warrants Goodman challenges were issued by the state court and authorized audio recordings of controlled buys by an informant. (*See* Docs. 67-1, 67-2, 67-3.) Such recordings are specifically permitted by statute, *see* 18 U.S.C. § 2511(2)(c), and Goodman has no Fourth Amendment privacy interest in what he voluntarily stated to a cooperating individual who consented to the recording, *see United States v. White*, 401 U.S. 745, 749–51 (1971); *United States v. Wahchumwah*, 710 F.3d 862, 867 (9th Cir. 2013). Nor would suppression be appropriate under Montana law because "evidence obtained from a consensual wiretap conforming to 18 U.S.C. § 2511(2)(c) is admissible in federal court proceedings without regard to state law." *United States v. Adams*, 694 F.2d 200, 201–02 (9th Cir. 1982). Thus, Goodman's challenges to the first three warrants fail as a matter of law.

## II. Pen Register

The fourth warrant was issued by a federal magistrate and authorized the collection of location data from Goodman's cellular telephone. (*See* Doc. 67-4.) The government has stated that "[t]here was no evidence obtained from this warrant and none to be presented at trial." (Doc. 73 at 2.) Accordingly,

Goodman's challenge to this warrant is moot.

## III. Garage Search

Based on the foregoing, the only warrant at issue involves the search of Goodman's detached garage at 4700 Mullan Road. (*See* Doc. 67-5.)

### A. Legal Standard

"A magistrate judge's finding of probable cause is entitled to great deference" and a search warrant will not be invalidated if the judge "had a 'substantial basis' for concluding that the supporting affidavit established probable cause." *United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000) (internal quotation marks omitted). "Probable cause exists when the magistrate judge finds that, considering the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found." *Id.* (internal quotation marks and alteration omitted).

The determination of whether information provided by confidential informants establishes probable cause is assessed under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Under this standard, "[e]vidence bearing on the veracity of the informant and his basis of knowledge is considered together with other relevant evidence." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1396 (9th Cir. 1986). An informant's "veracity" or trustworthiness may be established by showing that the informant "provided accurate information

3

on past occasions," the informant made "admissions against penal interest," or there was "independent police corroboration of the information provided." *Id.* at 1397; *accord United States v. Rowland*, 464 F.3d 899, 907–908 (9th Cir. 2006). The "basis of knowledge" prong "requires that the affiant set forth the underlying circumstances that led the informant to believe that criminal activity was occurring; a mere conclusory allegation that a suspect was engaging in criminal activity is insufficient." *Angulo-Lopez*, 791 F.2d at 1397. "[A] weakness in either the 'veracity' or 'basis of knowledge' prong is not fatal to a finding of probable cause, as long as the issuing magistrate had a 'substantial basis' for the finding." *Id.* at 1396.

### B. Analysis

On September 10, 2019, Special Agent Kroschel applied for a search warrant for Goodman's garage at 4700 Mullan Road. (Doc. 67-5 at 8–22.) The affidavit is based primarily on the information provided by four confidential informants whose identities were known to law enforcement. Based on the information contained in the four corners of the warrant affidavit,[1] there was sufficient probable cause for the search warrant.

---

[1] Special Agent Kroschel's testimony at the suppression hearing merely established that the statements made in the warrant were accurate and not misleading. That testimony was not considered in assessing whether sufficient information was provided in the affidavit itself to establish probable cause.

4

1. **CS1**

The affidavit states that CS1 "has provided reliable information in the past, [and] provided information on Allan Goodman." (Doc. 67-5 at ¶ 5.) CS1 identified Goodman "as a heroin supplier in Missoula" and explained that "Goodman became a supplier after his son, Stephen Goodman, was federally indicted and sentenced to prison in January 2018 for selling heroin in the Missoula area." (*Id.*) On July 16, 2019, CS1 personally observed Goodman sell one ounce of heroin and an eight-ball of methamphetamine to a third party at Goodman's shop on Mullan Road. (*Id.* at ¶ 11.) On July 31, 2019, Goodman contacted CS1 inquiring whether CS1 knew anyone who wanted to purchase heroin or a gun. (*Id.* at ¶ 14.) On August 1, 2019, CS1 went to Goodman's shop and personally observed two black pistols and 1/8-ounce of heroin and overheard Goodman talking about a Ruger LCP .380 pistol. (*Id.* at ¶ 15.) CS1 also identified the 4700 Mullan Road garage on a drive by and said that Goodman had cameras both inside and out. (*Id.* at ¶ 16.) CS1 went to Goodman's garage again on August 30, 2019 at Goodman's request and, while there, observed a gun and several grams of heroin. (*Id.* at ¶ 18.) CS1 believed Goodman received the gun from another individual in exchange for heroin. (*Id.*) CS1 also observed a monitor inside the garage the provided views of both the parking area and the garage. (*Id.*)

The affidavit provides sufficient grounds to assess the veracity and basis of

5

knowledge of CS1's information. Most of CS1's information is based on personal observations of Goodman. Those observations, including Goodman's involvement with firearms and in drug transactions, is corroborated by the information provided by the other informants. CS1's knowledge of the garage location was also corroborated by law enforcement. The allegation regarding Goodman's son, while likely not the result of direct knowledge, can also be independently corroborated by court records.

### 2. CS2

The affidavit states that CS2 "has provided reliable information during the course of this investigation." (Doc. 67-5 at ¶ 6.) CS2 was interviewed on June 12, 2019, and identified Goodman as a methamphetamine supplier in Missoula. (*Id.*) Approximately one week prior to the interview, CS2 personally observed Goodman with five to seven ounces of methamphetamine concealed in a bag in his vest pocket while they were inside Goodman's garage. (*Id.*) CS2 described the garage's location on Mullan Road "near a bird sanctuary" and said that Goodman used it as a mechanics shop. (*Id.*) CS2 admitted to obtaining a half-ounce of methamphetamine from Goodman every two to three days for $300-450 and to having purchased a half ounce of methamphetamine five or six times from Goodman in the preceding three weeks. (*Id.* at ¶ 7.) CS2 reported that Goodman was traveling to Washington to transport drugs back to Montana in order to sell

6

them and that Goodman has said that he obtains three pounds of methamphetamine and three "pieces" (street slang for one ounce) of heroin on every trip. (*Id.* at ¶ 8.)

The affidavit provides sufficient grounds to assess the veracity and basis of knowledge of CS2's information. Most of CS2's information is based on personal observations of Goodman. CS2 admits to having purchased drugs from Goodman and CS2's observations are consistent with those provided by CS1. CS2 also accurately described the location of the garage.

### 3. CS3

The affidavit states that CS3 "has provided reliable information." (Doc. 67-5 at ¶ 9.) CS3 also identified Goodman as a methamphetamine and heroin supplier in Missoula, describing him as "the largest heroin supplier in Missoula." (*Id.* at ¶¶ 9–10.) CS3 further stated that Goodman "frequented hotels and his shop" on Mullan Road and that two days prior, Goodman had three firearms. (*Id.* at ¶ 10.) CS3 admitted to purchasing half- and one-ounce quantities of heroin from Goodman, and CS3 was later federally indicted for drug possession. (*Id.*)

The affidavit provides sufficient grounds to assess the veracity and basis of knowledge of CS3's information. The basis of CS3's knowledge is the admission, against CS3's own penal interest, to the direct purchase of drugs from the defendant. Even if that admission is tempered by the fact that CS3 was criminally charged (so may have a motive to cooperate), CS3's other statements, i.e., that

7

Goodman is a drug supplier, has firearms, and has a shop on Mullan Road, were all corroborated by the statements of the other informants.

### 4. CS4

The affidavit states that "CS4 has been deemed reliable by the [Missoula Drug Task Force] personnel." (Doc. 67-5 at ¶ 12.) The affidavit indicates that CS4 was involved in three different controlled buys with Goodman, and has purchased more than one ounce of suspected methamphetamine from him. (*Id.* at ¶¶ 12–13.) The affidavit provides sufficient grounds to assess the veracity and basis of knowledge of CS4's information, primarily because it describes law enforcement's direct surveillance of his purchase of methamphetamine from Goodman.

### 5. Totality

The affidavit also provides a brief description of Goodman's criminal history, identifying him as a prohibited person under 18 U.S.C. § 922. (Doc. 67-5 at ¶ 17.) Unlike the "conclusory statement[s]" warned of in *Gates*, the affidavit provides both a basis for both the informants' respective knowledge and veracity. *See* 462 U.S. at 239. It is not "a mere ratification of the bare conclusions of others." *Id.* Considered as a whole, the warrant affidavit provides a substantial basis for the judge's finding that there was probable cause to believe Goodman had illegal firearms and drugs at his shop on Mullan Road. *Angulo-Lopez*, 791 F.2d at

8

1397.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Goodman's motion to suppress (Doc. 66) is DENIED.

DATED this 12th day of December, 2019.

_____  10:33 A.M.
Donald W. Molloy, District Judge
United States District Court